85 P.3d 887 (2004)
151 Wash.2d 118
STATE of Washington, Petitioner,
v.
Marcus A. CARTER, Respondent.
No. 72992-1.
Supreme Court of Washington.
Argued September 9, 2003.
Decided March 11, 2004.
*888 Russell Hauge, Kitsap County Prosecutor, Port Orchard, for petitioner.
Marcus Carter, Port Orchard, for respondent.
IRELAND, J.
Two off-duty investigators discovered an illegally modified firearm at a gun training class. The trial court suppressed the gun at trial, holding that the off-duty investigators should not have examined or seized the gun without a warrant. The Court of Appeals affirmed and the State appeals. The defendant had no expectation of privacy in his rifle when he put it in open view of the class and invited the students to handle it. Therefore, we hold that the investigators did not need a warrant to examine the rifle. We also hold that exigent circumstances existed which entitled the investigators to seize the gun without a warrant.

FACTS
Bruce Jackson and Frank Clark are criminal investigators with the Pierce County prosecutor's office. They are not considered law enforcement officers, nor do they have law enforcement powers. The defendant, Marcus Carter, was the chief instructor for Kitsap Rifle and Revolver Club and was certified by the Washington State Criminal Justice Training Commission to teach firearms training.
On May 15, 1999, Jackson and Clark attended a National Rifle Association certified firearms instructor class in Kitsap County taught by Carter. Jackson and Clark were attending the class for personal reasons in order to become certified as instructors for the junior rifle program at the Tacoma Rifle and Revolver Club.
Carter began class by asking each student to prepare an introduction of a fellow student. Accordingly, another student introduced Jackson, informing the group and Carter that Jackson was a chief criminal investigator for the Pierce County prosecutor's office. Sometime later, Carter brought out various firearms and set them on tables before the class. He asked the students to familiarize themselves with the firearm of their choice and prepare a demonstration during which they would describe the proper handling and safety functions of the firearm. Among the firearms was an AR-15 owned by Carter. Jackson was very familiar with *889 the AR-15 and chose that weapon to demonstrate to the class.
The AR-15 rifle is the semiautomatic, civilian version of the automatic, military M-16 rifle. An automatic weapon will continue to fire as long as the trigger is held, and is commonly known as a machine gun. It is generally illegal to own an M-16. RCW 9.41.190.
Jackson noticed that the safety lever on the AR-15 rotated into a position that corresponds to the automatic fire selection on an M-16. The AR-15 safety lever cannot rotate into this position without having been modified. Jackson also noticed that the lever had the silver color and the finish of an M-16, rather than the traditional charcoal-black color of an AR-15. Jackson suspected that the AR-15 had been modified to allow it to fire automatically. He operated the firing mechanism and determined the weapon was capable of automatic fire. Jackson showed the gun to Clark, who concurred with Jackson's observations.
Jackson then opened the gun by removing a pin that allows the gun to pivot open. Jackson noticed immediately that a small aluminum block called an autosear had been added. An autosear, which prevents an automatic gun from jamming, is not available for purchase. Jackson asked Carter if the gun had been modified and Carter admitted that it had. As Jackson began to close the gun, Carter removed the autosear from the gun and put it in his pocket.
After class when the other students had left, Jackson and Clark approached Carter about the rifle. Carter admitted that he had put M-16 parts in the rifle to replace those AR-15 parts that were designed for semiautomatic operation, specifically identifying the bolt carrier, hammer, selector switch, and autosear. Carter admitted that the rifle could fire in fully automatic mode. With the gun still in their possession, Jackson and Clark told Carter that it was a felony to own such a weapon.
Carter then denied that the gun was illegal and insisted that the gun would not fire in a full-automatic mode. Carter wanted to demonstrate it to Jackson and Clark if they would let him take it to the range with a loaded magazine. Carter went to his car to collect some ammunition. Carter then engaged in what Jackson and Clark described as furtive movements. Carter began rummaging through items in the backseat of his car, and then returned to the classroom, and called out to another man that he needed a punch, a straight steel pin that would disable the autosear. Jackson told Carter that he would not be allowed to destroy or modify the autosear.
Jackson and Clark testified to feeling that the situation was quickly getting out of control and that Carter was very agitated and antagonistic. Carter grabbed the gun from Clark's hands and walked briskly back to his car. Jackson and Clark noticed a loaded 30-round magazine for the rifle in Carter's rear pocket. As Carter kneeled on the front seat in his car and fumbled with metal objects on the floor, Jackson saw that Carter had a loaded pistol under his shirt. Jackson told Carter that he felt Carter was posing a potentially lethal hazard to them. Jackson told Carter to turn around and bring his hands into view, which Carter failed to do. Jackson and Clark then gave Carter a choice: either he give them the rifle and autosear and they would give him a receipt for it and submit it for testing to the Washington State Patrol Crime Lab, or they would call the police. Carter delayed, so Clark placed a 911 call and asked that a deputy be sent. When Carter discovered the call had been made, he relinquished the rifle and autosear, and Jackson and Clark gave Carter a receipt. A deputy arrived, who asked Jackson and Clark to maintain custody of the AR-15. Jackson and Clark filed a report on the incident.
Carter was charged with one count of possessing a machine gun in violation of RCW 9.41.190(1) and .010(7). Carter moved to suppress the rifle, contending that the search and seizure of the rifle were unlawfully conducted without a warrant. The trial court agreed and dismissed the charges against Carter with prejudice. The Court of Appeals affirmed in an unpublished opinion, and the State appeals. State v. Carter, noted at 112 *890 Wash.App. 1046, 2002 WL 31186936 (2002). We reverse.

ANALYSIS
State Action
As a general rule, neither state nor federal constitutional protections against unreasonable searches and seizures are implicated, without state action. In re Pers. Restraint of Maxfield, 133 Wash.2d 332, 337, 945 P.2d 196 (1997). The State contends that Jackson and Clark were not acting as state agents at the time of the search and seizure of Carter's firearm. The trial court found, and the Court of Appeals affirmed, that Jackson and Clark were acting in their official capacities as criminal investigators at the time of the search and seizure of Carter's firearm and were thus state actors. Carter, 2002 WL 31186936, at **3-4. The trial court also concluded that Jackson's and Clark's examination and seizure of the AR-15 was an unconstitutional violation of Carter's privacy.
Review of conclusions of law entered by the trial court at a suppression hearing is de novo. State v. Cardenas, 146 Wash.2d 400, 407, 47 P.3d 127, 57 P.3d 1156 (2002). It is not necessary for us to review the trial courts finding of state action because even if Jackson and Clark were state actors, their actions in examining and seizing the gun did not require a warrant. Therefore, we turn to the question of whether Carter had a recognizable privacy interest in the AR 15 he provided to the class.
The federal constitution provides the minimum protection against warrantless searches and seizures. Our state constitution generally provides greater protection under article I, section 7, and we begin our evaluation of any expectation of privacy under the state provision. City of Seattle v. Mesiani, 110 Wash.2d 454, 456, 755 P.2d 775 (1988).[1]
Privacy Interests
Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." This provision protects a person's home and private affairs from warrantless searches. State v. Young, 123 Wash.2d 173, 181, 867 P.2d 593 (1994). An unlawful search occurs when the State has unreasonably intruded into a person's private affairs. Young, 123 Wash.2d at 181, 867 P.2d 593. A search must be conducted pursuant to a warrant, or else meet one of the exceptions to the warrant requirement. State v. Myrick, 102 Wash.2d 506, 510-11, 688 P.2d 151 (1984). The Court of Appeals concluded that Carter had a privacy interest in the AR-15, and the viewing of the gun's interior without a warrant was an unlawful search. Carter, 112 Wash.App. 1046, 2002 WL 31186936, at *5. We disagree.
Article I, section 7 recognizes privacy interests that Washington citizens have held, and should be entitled to hold, free from governmental intrusion. Myrick, 102 Wash.2d at 511, 688 P.2d 151. Thus, the first step is to determine whether the claimed privacy interest is one that has been recognized in our state. We find no historical precedent establishing a privacy interest in a gun itself. Furthermore, we do not find a basis for recognizing a privacy interest in an object which has voluntarily been placed in open view of the public and which the public has been encouraged to handle.
Generally, one does not have a privacy interest in what is voluntarily exposed to the public. Young, 123 Wash.2d at 182, 867 P.2d 593. No search occurs, and the protections of article I, section 7 are not implicated, when a law enforcement officer is able to detect something by using one or more of his senses while lawfully present at a vantage point. Cardenas, 146 Wash.2d at 408, 47 P.3d 127; State v. Seagull, 95 Wash.2d 898, 901, 632 P.2d 44 (1981). The protections of article I, section 7 are triggered only when a person's private affairs *891 are disturbed or the person's home invaded. City of Seattle v. McCready, 123 Wash.2d 260, 270, 868 P.2d 134 (1994).
In this case, Carter cannot claim his private affairs were disturbed when he voluntarily placed the gun on a table in open view of the class and then invited the class members to handle and explore the gun. Carter did nothing to exhibit a privacy interest in the AR-15. In fact, he did just the opposite. He not only put the rifle in open view of the class, he also encouraged the class to pick it up, examine it, and perform safety checks on it. Carter cannot now claim an expectation that either the exterior or the interior of the rifle would remain private. The contraband nature of the gun was immediately apparent from its exterior and firing capability, and was confirmed by viewing the interior of the gun, which was easily accessible during the examination Carter asked the students to perform. Therefore, we hold that one does not have a privacy interest in a gun or its interior mechanisms, when placed in open view of the public and members of the public have been invited to handle it. Accordingly, no "search" occurred for purposes of article I, section 7 when Jackson examined the AR-15, and Jackson's warrantless examination was lawful.
The Fourth Amendment to the federal constitution also provides protection against warrantless searches and seizures. Young, 123 Wash.2d at 189, 867 P.2d 593. A "search" within the protection of the Fourth Amendment requires that the person seeking the protection of the Fourth Amendment have a justifiable, reasonable, or legitimate expectation of privacy in the thing examined. State v. Crandall, 39 Wash.App. 849, 852, 697 P.2d 250 (1985). In addition, the defendant must establish his subjective expectation of privacy. State v. Jones, 68 Wash.App. 843, 850, 845 P.2d 1358 (1993). A subjective expectation of privacy is unlikely to be found where the person asserting the right does not solely control the area or thing being searched. See State v. Jeffries, 105 Wash.2d 398, 717 P.2d 722 (search lawful where boxes kept on property not owned by defendant because he could not expect to keep people from looking inside them when they discovered them), cert. denied, 479 U.S. 922, 107 S.Ct. 328, 93 L.Ed.2d 301 (1986). The Fourth Amendment does not protect what a person knowingly exposes to the public. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
The Court of Appeals relied on Kealey, a Fourth Amendment case holding that a person has a reasonable expectation of privacy in the interior of a purse that was inadvertently left in a store. State v. Kealey, 80 Wash.App. 162, 169, 907 P.2d 319 (1995). When the store clerk looked inside the purse, she found drugs. The Kealey court's conclusion was based on the United States Supreme Court's view that "[p]urses, briefcases, and luggage constitute traditional repositories of personal belongings protected under the Fourth Amendment." Kealey, 80 Wash.App. at 170, 907 P.2d 319.
However, a gun is not like a purse, briefcase, or luggage. A gun is not something in which belongings are stored or things are kept from public view. While certain items, like personal repositories, may retain their private character even when in a public place, most things lose any expectation of privacy when placed in open, public view. State v. Myers, 117 Wash.2d 332, 345, 815 P.2d 761 (1991). Thus, Kealey does not support the contention that a search subject to the protections of the Fourth Amendment occurred when Jackson examined the AR 15 that had been placed in public view.
Therefore, we hold that under article I, section 7 of the state constitution and under the Fourth Amendment to the federal constitution, there is no privacy interest in a firearm, or the interior of a firearm, which has been placed in open view. Jackson's and Clark's examination of Carter's rifle was not a search subject to the warrant requirement.
Exigent Circumstances
Again, without deciding whether Jackson and Clark were state actors, we also hold that Jackson and Clark did not need a warrant to seize Carter's gun because the warrantless seizure of Carter's weapon was appropriate under the exigent circumstances exception to the warrant requirement.
*892 A warrantless search qualifies for an exception to the warrant requirement if delay will probably result in the destruction of evidence or endanger the safety of officers or third persons. State v. Hendrickson, 129 Wash.2d 61, 71, 917 P.2d 563 (1996). Whether exigent circumstances exist must be determined by the totality of the circumstances. State v. Patterson, 112 Wash.2d 731, 735-36, 774 P.2d 10 (1989).
Here Carter was informed during introductions that Jackson was a chief criminal investigator for the Pierce County prosecutor's office. Carter told Jackson to inspect and do a safety-check of a firearm. Jackson inspected Carter's AR-15 and noticed that the silver finish on the selector switch did not match the charcoal-black finish on the body of the AR-15 rifle. Jackson knew from experience that the M-16 is usually silver, and he suspected that a selector switch from an M-16 had been illegally attached to the AR-15. Jackson also observed that the selector switch rotated around, past both the safety and semiautomatic firing positions, into a position that corresponds to the M-16 fully automatic firing position. Indeed, when Jackson operated the firing mechanism as part of the safety check, he noted that the rifle was capable of firing in the fully automatic position. Moreover, Carter admitted he had altered the rifle to function in fully automatic mode. Under these circumstances, Jackson and Clark had probable cause to suspect that the AR-15 was illegally modified.
In addition, Jackson and Clark were concerned for their safety and feared the destruction of the evidence. Carter had removed the autosear from the rifle and put it in his pocket. Carter tried to disable the sear with a punch. Carter, who had a loaded pistol on him, became antagonistic with Jackson and Clark, and they reasonably felt the situation was getting out of control. Under these circumstances, the seizure of Carter's rifle fell within the exigent circumstances exception to the warrant requirement.
The remainder of defendant's arguments are unsupported and without merit, and we decline to reach them.

CONCLUSION
The search of Carter's rifle did not implicate article I, section 7 of the state constitution or the Fourth Amendment to the federal constitution because there was no recognizable privacy interest in the AR-15. Carter presented the firearm in open view of the students and invited them to handle it. This precluded any expectation of privacy in the gun. Additionally, the warrantless seizure of the firearm qualifies for the exigent circumstances exception warrant requirement. We therefore reverse the Court of Appeals and remand the case to the trial court for further proceedings consistent with this opinion.
ALEXANDER, C.J., JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS and FAIRHURST, JJ., concur.
SANDERS, J. (dissenting).
The critical question posed is whether Marcus Carter maintained an expectation of privacy in the inner working of his AR-15 rifle when he allowed members of his class to handle the firearm according to specific instructions which did not include disassembling it. The majority blends the exterior of the firearm into its interior, holding they are one and the same. I disagree.
Our state constitution mandates, "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. We have stated time and time again this paramount right protects "`those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant.'" State v. Boland, 115 Wash.2d 571, 577, 800 P.2d 1112 (1990) (quoting State v. Myrick, 102 Wash.2d 506, 510-11, 688 P.2d 151 (1984)).
The majority correctly cites the general rule describing the open view doctrine, namely that "one does not have a privacy interest in what is voluntarily exposed to the public." Majority at 890 (citing State v. Young, 123 Wash.2d 173, 182, 867 P.2d 593 (1994)). However, the open view doctrine applies and a Washington citizen's privacy expectation vanishesonly when "`the observation *893 takes place from a non-intrusive vantage point.'" State v. Seagull, 95 Wash.2d 898, 902, 632 P.2d 44 (1981) (quoting State v. Kaaheena, 59 Haw. 23, 575 P.2d 462, 467 (1978)). The open view doctrine does not applyand a Washington citizen's privacy expectation remains"[i]f the officer substantially or unreasonably departs from a non-intrusive area, or employs a particularly intrusive method of viewing." State v. Myers, 117 Wash.2d 332, 345, 815 P.2d 761 (1991) (emphasis added).
Contrary to the majority's characterization, Carter did not grant Bruce Jacksonor any of his other students for that matter the unbridled authority to dismantle any firearm located on the classroom table. Carter did ask his students "to demonstrate the proper method of unloading the AR-15 and rendering it safe." Def.'s ex. 5, at 4. According to the record, rendering the firearm safe in the exercise in question entailed "clearing [the firearm], confirming that it's safe and unloaded, [and] then working the bolt back and forth, making sure that it's clear in its braces, that the recoil return spring and buffer are functioning correctly." Clerk's Papers (CP) at 102. The students were also instructed to "engage the safety in the on position, pulling the trigger to ensure that the safety functions correctly," and to "dry cycl[e]" the firearm. Id. Carter therefore could not reasonably expect any privacy with respect to the exterior of the gun.[1]
However, the record reveals the students were not authorized, much less asked, to disassemble the AR-15 and examine the firearm's interior:
Q Had I given you permission to take that rifle apart?
A No.
Q Had you asked for permission?
A No.
Q.... Did anyone else in the class disassemble that rifle in the manner that you did?
A I don't know. I didn't see anybody do it.
CP at 137. The trial court also found Jackson "made an internal inspection without Carter's permission, of the firearm which was later seized." CP at 205. The State did not assign error to this finding rendering it a verity on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994). The record therefore reveals Carter expected the internal components of the firearms would not be subject to prying eyes. Jackson "employ[ed] a particularly intrusive method of viewing" to examine the auto-sear upon which the State based its charges against Carter. Myers, 117 Wash.2d at 345, 815 P.2d 761. The interior of the firearm was not in open view, thereby requiring Jackson to obtain a lawful warrant before invading the internal components of Carter's property.
As such, I am not persuaded by the majority's attempt to distinguish State v. Kealey, 80 Wash.App. 162, 907 P.2d 319 (1995). See majority at 891. Kealey held a person maintained an expectation of privacy in the contents of her purse even after she inadvertently left it in a department store. Id. at 168-69, 907 P.2d 319. Noting what a person "`seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected,'" the court rejected the State's contention that the defendant abandoned her expectation of privacy in the interior of her purse. Id. at 168-69, 907 P.2d 319 (quoting Katz v. United States, 389 U.S. 347, 351-52, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). The same may be said here. Like Kealey, Carter's AR-15 was closed at all times before Jackson opened it, and Carter never gave permission to any student to deviate from his express instructions on rendering the firearm safe. That Kealey involved a purse's interior and this case involves the interior of a weapon is of no consequence. Property is property and a Washington citizen should expect his or her personal effects *894 will not be dismantled. The warrantless search of the firearm was unlawful.
I would affirm the Court of Appeals.
NOTES
[1] A Gunwall analysis is not needed in this case, and neither party has provided one, because this court has already established that article I, section 7 is more protective than the Fourth Amendment to the federal constitution. State v. Young, 123 Wash.2d 173, 179-80, 867 P.2d 593 (1994).
[1] Indeed, as the Court of Appeals noted, Jackson could easily have ceased his examination of the firearm at that point and lawfully attempted to obtain a warrant. See State v. Carter, noted at 112 Wash.App. 1046, 2002 WL 31186936, at *5 n. 14. However that hindsight reveals Jackson might have lawfully procured a warrant does not validate a warrantless search. See Agnello v. United States, 269 U.S. 20, 33, 46 S.Ct. 4, 70 L.Ed. 145 (1925) ("[S]uch searches are held unlawful notwithstanding facts unquestionably showing probable cause.").