[No. 34068-2-II. Division Two. November 7, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS PAUL WILLIAMS, *Appellant*.

916

918

*Stephanie C. Cunningham*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Alicia M. Burton, Deputy*, for respondent.

¶1 Van Deren, J. — Thomas Paul Williams appeals his conviction for possessing depictions of a minor engaged in sexually explicit conduct, in violation of RCW 9.68A.070, while he was a resident at the McNeil Island Special Commitment Center (SCC). The SCC staff seized his personal computer during his stay at SCC pending trial on the State's petition to declare him a sexually violent predator (SVP). The staff's discovery of sexually explicit material in a daily planner Williams left in an SCC common area precipitated

the search, which revealed a computer file containing a pornographic photograph.

¶2 Williams argues that (1) the trial court erred when it denied his motion to suppress the computer file because it was illegally seized in violation of his privacy rights as an involuntarily civilly committed person and (2) the evidence was insufficient to show that he knew that the illegal photograph was on his computer.

¶3 Because the SCC had adequate reason to believe that Williams' computer contained illegal files, the search did not exceed the purposes of the SCC detention and Williams had adequate notice that his privilege to possess a computer was conditioned on SCC computer searches, so the search did not violate Williams' privacy rights. Furthermore, the evidence was sufficient to convict him as charged. We affirm.

## FACTS

¶4 Based on the State's petition, Kitsap County Superior Court found probable cause to hold Thomas Paul Williams at the SCC on McNeil Island until a court determined whether he was an SVP.

¶5 At the SCC, each resident has a private room accessible only to the resident and SCC staff, and SCC rules prohibit residents from possessing pornography of any kind. Residents are allowed to own computers and keep them in their rooms but only after approval from an SCC counselor. Once the resident obtains approval and receives the computer, the SCC information technology department inspects it to ensure that its hardware, software, and other components comply with SCC policy. During this process, the information technology department screens the computer's hard drive and eliminates noncompliant files and user-created files.

¶6 Because residents are not allowed Internet access, the information technology department also disables all Internet capabilities. Residents are also prohibited from

sharing or exchanging any files, software, or hardware and from installing components, such as secondary hard drives, to their inspected and approved computers. In order to assure compliance with these prohibitions, SCC Policy 212 authorizes its staff to seize and search a resident's computer at any time without permission.

¶7 Williams received a computer in August 2002. An SCC information technology employee testified that his department would have inspected and approved Williams' computer according to the SCC procedures.

¶8 On December 20, 2004, a resident discovered a daily planner in an SCC common area and turned it over to the staff. Inside the planner, staff members discovered two photos of a female, nude from the waist up, and a computer disk. The computer disk had nine additional images of the same female.

¶9 When questioned, Williams admitted that the planner was his and that the photos were of his girl friend. Because SCC staff members were concerned that Williams might have additional pornographic material on his computer, they removed it from Williams' room without his permission.

¶10 The SCC reexamined the computer and determined that it contained two hard drives—a primary factory-installed hard drive and a secondary non-factory-installed hard drive that was installed after August 2002. The computer's hard drives had a total of 16,613 stored picture files and, in a folder next to some music files on the computer's secondary hard drive, a photograph of a female and male engaged in a sexually explicit act. At trial, expert testimony indicated that the female was a child significantly under the age of 18.

¶11 The SCC determined that the pornographic file had been created on November 18, 2004. The oldest files on the second hard drive were created on March 24, 2004, indicating that the second hard drive was likely installed on that date.

¶12 The State charged Williams with possession of depiction of a minor engaged in sexually explicit conduct, a

violation of RCW 9.68A.070. The trial court refused to suppress the photograph file, and a jury convicted Williams as charged. He was sentenced to a six-month standard range sentence.

¶13 Williams appeals the denial of his suppression motion and the sufficiency of the evidence establishing that he had knowledge that an illegal image was stored on his computer's secondary hard drive.

## ANALYSIS

I. DENIAL OF WILLIAMS' MOTION TO SUPPRESS PHOTOGRAPH FILE

¶14 Williams argues that the state and federal constitutions protect his privacy in both the contents of his room and his computer files and that SCC staff violated his privacy rights by seizing and searching his computer without a warrant and without his consent. The State responds that the search of Williams' room and the seizure of his computer were reasonable under the circumstances and performed under authority of statutory, regulatory, and case law.

¶15 The trial court denied Williams' motion to suppress the photograph file found in the second hard drive on his computer, stating:

[U]nder the authority that the State has cited, particularly the *In re* [*Pers. Restraint of* ]*Young*[, 122 Wn.2d 1, 857 P.2d 989 (1993)] and *In re* [*Pers. Restraint of* ]*Paschke*[, 80 Wn. App. 439, 909 P.2d 1328 (1996)], I think the conclusion of the courts is clear that there is a lessened privacy right due to the need to confine residents in a maximum security facility, and also I think there is a need to act immediately to either correct behavior or protect the other people within such a facility.

Based on the stipulated facts in this case, there was preliminary information and facts known to the treatment center and, in essence, a good cause to act immediately based on the facts that have been stipulated to. There was some immediacy with regard to the concerns. Under that authority, you know, I believe the Special Commitment Center is authorized, without

consent, and without a warrant, to conduct a search within the room. That would include a search and seizure of the computer, based on the information they had.

Report of Proceedings at 14-15.

## A. Standard of Review

█ ¶16 We normally review the trial court's denial of a motion to suppress by determining whether substantial evidence supports its findings of fact and whether the findings support the trial court's conclusions of law. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999); *State v. Teran*, 71 Wn. App. 668, 671, 862 P.2d 137 (1993). But here, there are no disputed facts because the case was submitted on stipulated facts. Thus, we review de novo the trial court's conclusions of law denying Williams' motion to suppress the photograph file. *See State v. Carter*, 151 Wn.2d 118, 125, 85 P.3d 887 (2004).

## B. Expectation of Privacy

¶17 Williams argues that persons who are involuntarily civilly committed enjoy broader privacy rights than those criminally confined. More specifically, he argues that provisions in Washington's SVP civil commitment statute[1] and its accompanying regulations[2] expressly state that SCC residents (1) do not forfeit any legal rights and (2) are permitted to keep and use their own possessions. These provisions, Williams asserts, demonstrate a legislative intent that SCC residents retain a privacy interest in their

---

[1] RCW 71.09.080(1) states:

Any person subjected to restricted liberty as a sexually violent predator pursuant to this chapter shall not forfeit any legal right or suffer any legal disability as a consequence of any actions taken or orders made, other than as specifically provided in this chapter.

[2] WAC 388-880-050(2) states in part:

(2) A person the court detains for evaluation or commits to the SCC shall:

(a) Receive adequate care and individualized treatment;

(b) Be permitted . . . to keep and use the person's own possessions, except when deprivation of possession is necessary for the person's protection and safety, the protection and safety of others, or the protection of property within the SCC . . . .

personal possessions. Furthermore, he cites *Hydrick v. Hunter*, 449 F.3d 978, 997 (9th Cir. 2006), which addresses California's sexually violent predator statute,[3] for the proposition that there is no blanket qualified immunity allowing entities detaining SVPs to conduct a search or seize property in an arbitrary or retaliatory manner, or in a manner that clearly exceeds the legitimate purpose of their detention. He also argues that *Hydrick* requires that the detained individual's rights be balanced against the State's interests. 449 F.3d at 993. Williams concludes that his privacy interests were violated under these standards because SCC staff did not have reason to believe that his computer contained illegal files simply because they found photographs of a naked adult female in his daily planner.

¶18 The State argues that Washington's SVP civil commitment statute and its accompanying regulations are narrowly drawn to serve the State's compelling interest in treating sexual predators and in protecting society from their actions. The State also argues that Washington courts have recognized that SCC residents have a lessened privacy interest and that SCC staff must have authority to search residents and their rooms in order to fulfill the SVP civil commitment statute's compelling dual interest of treatment and protection of society. We agree.

■■ ¶19 The Fourth Amendment prohibits "unreasonable searches and seizures," but it allows reasonable warrantless searches and seizures, U.S. CONST. amend. IV; *State v. Morse*, 156 Wn.2d 1, 9, 123 P.3d 832 (2005), and it provides the minimum protection against warrantless searches and seizures. *Carter*, 151 Wn.2d at 125. The Washington Constitution generally provides broader protection under article I, section 7, and evaluation of any expectation of privacy in Washington begins under this provision. *Carter*, 151 Wn.2d at 125. Our state constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. An

---

[3] CAL. WELF. & INST. CODE §§ 6600-6609.3.

unlawful search occurs when the State unreasonably intrudes in a person's private affairs. *Carter*, 151 Wn.2d at 125 (citing *State v. Young*, 123 Wn.2d 173, 181, 867 P.2d 593 (1994)).

¶20 In Washington, convicted sex offenders have a reduced expectation of privacy because of the public's interest in public safety and in the effective operation of government. *In re Det. of Campbell*, 139 Wn.2d 341, 355-56, 986 P.2d 771 (1999) (quoting *State v. Ward*, 123 Wn.2d 488, 502, 869 P.2d 1062 (1994) (quoting Laws of 1990, ch. 3, § 116)). Although persons involuntarily committed to the SCC are entitled to more considerate treatment and conditions of confinement than criminals, *Young*, 122 Wn.2d at 34, they do not enjoy the same Fourth Amendment protections as ordinary citizens. *Paschke*, 80 Wn. App. at 447, *remanded on other grounds,* 156 Wn.2d 1030, 131 P.3d 905 (2006).[4] To provide a safe environment for its residents, the SCC must have authority to take immediate action to search or confine persons without notice. *Paschke*, 80 Wn. App. at 447. Furthermore, as Division Three of this court held in *Paschke*, "the [SCC's] policies are narrowly drawn so as to cause the least interference with the confined person's civil rights." 80 Wn. App. at 447.

¶21 The provisions of WAC 388-880-050 are in accord with *Paschke*'s conclusions that the SCC search and seizure policies are narrowly drawn. It authorizes deprivation of personal possessions if such deprivation "is necessary for the person's protection and safety, the protection and safety of others, or the protection of property within the SCC . . . ." WAC 388-880-050(2)(b). The SCC seeks to treat sexually violent predators and protect society from their actions. *Young*, 122 Wn.2d at 26. Here, as an involuntarily committed resident at the McNeil Island SCC, Williams had a reduced expectation of privacy in both his room and computer. *See Campbell*, 139 Wn.2d at 355-56.

---

[4] The matter was remanded to the Court of Appeals, Division Three, for reconsideration, in light of *In re Detention of Marshall*, 156 Wn.2d 150, 125 P.3d 111 (2005), on whether the State had to prove a recent overt act.

¶22 Contrary to Williams' assertions, the SCC's search of his room and computer hard drives was reasonable and in accord with *Hydrick*. Internal SCC policies authorize the searches and seizures to, in part, enforce the SCC prohibition on the residents' possession of sexually explicit material. These policies are necessary to both treat and protect the residents and to protect others. They balance the rights of SCC residents with the State's interest in treatment and protection and do not violate Williams' privacy rights. *See Campbell*, 139 Wn.2d at 355-56.

¶23 Furthermore, Williams does not suggest that the search or seizure was conducted for arbitrary or retaliatory reasons and, thus, violated constitutional protections. A legitimate purpose of detention at the SCC is to prevent access to pornography by residents and to avoid both interference with treatment and acting-out behaviors linked to the residents' sexual deviance. These are legitimate treatment and safety concerns. *See Young*, 122 Wn.2d at 33-34 (citing former WAC 275-155-040(1) (1990), *recodified at* WAC 388--880-040). Washington courts "need not place undue limitations on the administration of state institutions." *See Young*, 122 Wn.2d at 34 (citing *Youngberg v. Romeo*, 457 U.S. 307, 321-22, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982)).

¶24 Moreover, Williams was on notice that SCC policy required that residents' computers be subject to search without notice. Williams' possession of the computer at the SCC was expressly conditioned on his compliance with rules that limited his expectation of privacy in the computer's contents. Under these circumstances, SCC staff did not violate his privacy rights by seizing and searching his computer after discovering sexually explicit material in his daily planner. It was reasonable for SCC staff to suspect that Williams possessed additional sexually explicit material on his computer.

¶25 The trial court did not err in admitting the photograph file.

II. Sufficiency of the Evidence

¶26 Under RCW 9.68A.070, a person who knowingly possesses visual or printed matter depicting a minor engaged in sexually explicit conduct is guilty of a class B felony. Williams argues that the evidence is insufficient to prove that he knew the illegal photograph was stored on his secondary hard drive.

¶27 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Tilton*, 149 Wn.2d 775, 786, 72 P.3d 735 (2003). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980) (citing *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975)). We must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) (citing *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)).

¶28 Here, in a folder next to some music files on Williams' computer's unauthorized secondary hard drive, SCC staff discovered a photograph of a minor female engaged in a sexually explicit act with a male. An SCC information technology employee determined that the file had been created on November 18, 2004, about one month after a document personal to Williams had been created on the same hard drive. Although evidence did not reveal when the file had last been accessed and other testimony suggested that prohibited file-, software-, and hardware-sharing is common among SCC residents, we note that the computer was in Williams' room, to which no other resident had access, and we defer to the trier of fact on persuasiveness of the evidence. *See Thomas*, 150 Wn.2d at 874-75. Based on the evidence, a reasonable trier of fact could have found beyond

a reasonable doubt that Williams knew that the illegal photograph was stored on his computer.

¶29 Affirmed.

HOUGHTON, C.J., and QUINN-BRINTNALL, J., concur.