255 P.3d 721 (2011)
161 Wash.App. 532
STATE of Washington, Appellant,
v.
Marcus Alton CARTER, Respondent.
No. 39392-1-II.
Court of Appeals of Washington, Division 2.
April 27, 2011.
*722 Jeremy Aaron Morris, Kitsap County Prosecutor's Office, Port Orchard, WA, for Appellant.
Marcus Alton Carter, pro se.
JOHANSON, J.
¶ 1 The State appeals the trial court's dismissal of a machine gun possession charge against Marcus Alton Carter. It argues that the trial court erred when it (1) ruled that the RCW 9.41.190(2)(b) exemption to the possession of an unlawful weapons statute, RCW 9.41.190(1), is an element of the offense the State had the burden of disproving; (2) ruled that RCW 9.41.190(2)(b) allows gunsmiths licensed under 18 U.S.C. § 923 and who have *723 repaired machine guns for the military and local law enforcement agencies to possess personal machine guns without first showing that such possession is allowed under federal law; and (3) dismissed the case after finding that the State had not demonstrated that the exemption did not apply to Carter. We hold that (1) the RCW 9.41.190(2)(b) exemption is not an element of the offense but, rather, a defense that Carter had the burden of establishing; (2) the RCW 9.41.190(2)(b) exemption does not allow for private possession of a machine gun unless the defendant shows that such possession is authorized under federal law; and (3) Carter failed to establish that the RCW 9.41.190(2)(b) exemption applied. Accordingly, we reverse and remand for further proceedings.

FACTS

I. Background
¶ 2 On May 15, 1999, two off-duty criminal investigators attended a certified firearms instructor course in Kitsap County that Carter was teaching. State v. Carter, 151 Wash.2d 118, 121-22, 85 P.3d 887 (2004). During the course, they became aware that Carter had what appeared to be an illegally-modified automatic firearm. Carter, 151 Wash.2d at 121, 124, 129-30, 85 P.3d 887. The investigators confronted Carter, took the gun, and contacted law enforcement. Carter, 151 Wash.2d at 123-24, 85 P.3d 887.
¶ 3 The State charged Carter with possession of a machine gun in violation of RCW 9.41.190(1). Carter, 151 Wash.2d at 124, 85 P.3d 887. Carter successfully moved to suppress the weapon based on an unlawful warrantless search. Carter, 151 Wash.2d at 124, 85 P.3d 887. The State appealed, and our Supreme Court reversed and remanded the case for further proceedings. Carter, 151 Wash.2d at 121, 124, 129-30, 85 P.3d 887. On remand, the trial court granted Carter's Knapstad[1] motion and dismissed the case with prejudice. State v. Carter, 138 Wash. App. 350, 353, 157 P.3d 420 (2007). In May 2007, we affirmed the dismissal but "clarif[ied] that the order of dismissal [was] without prejudice." Carter, 138 Wash.App. at 368, 157 P.3d 420. In August 2007, the State re-charged Carter with possession of a machine gun.

II. Motion to Dismiss
¶ 4 On March 20, 2009, Carter moved to dismiss,[2] this time arguing that he was exempt from prosecution under RCW 9.41.190(2)(b)(i) and (ii) because he was a "federally licensed gunsmith, a firearms instructor and inventor," who had worked on machine guns for law enforcement agencies and the military.[3] Clerk's Papers (CP) at 55. RCW 9.41.190(2) provides:
(2) [The prohibition against owning or possessing a machine gun stated in RCW 9.41.190(1)] shall not apply to:

(a) Any peace officer in the discharge of official duty or traveling to or from official duty, or to any officer or member of the armed forces of the United States or the state of Washington in the discharge of official duty or traveling to or from official duty; or
(b) A person ... who or which is exempt from or licensed under federal law, and engaged in the production, manufacture, repair, or testing of machine guns...:

(i) To be used or purchased by the armed forces of the United States;

*724 (ii) To be used or purchased by federal, state, county, or municipal law enforcement agencies; or
(iii) For exportation in compliance with all applicable federal laws and regulations.
(Emphasis added.) In support of his motion, Carter submitted a personal declaration in which he claimed to have worked on machine guns for law enforcement agencies and the military; and a copy of a title 18 U.S.C. federal firearms dealer's license.
¶ 5 Characterizing Carter's motion as a Knapstad motion, the State argued that (1) the motion was improper because Carter was alleging an affirmative defense that required him to show that he had complied with federal law, which was a jury question; (2) Carter failed to show that he was in compliance with federal law; and (3) to be entitled to the exemption, Carter had to show that he was licensed under title 26 U.S.C.[4] rather than under title 18 U.S.C. CP at 69-71.
¶ 6 On April 7, the trial court heard Carter's motion. Although it concluded that the RCW 9.41.190(2)(b) exemption was an element of the offense and that Carter had demonstrated that he was "licensed under federal law" at the relevant time, it denied Carter's motion after finding that Carter had failed to show that he had worked on machine guns for the armed forces or law enforcement. Report of Proceedings (RP) (Apr. 7, 2009) at 45-46.
¶ 7 Two weeks later, Carter filed a supplemental motion to dismiss and provided the trial court with two affidavits stating that he had worked on machine guns for the Mason County Sheriff's Office and the military. In addition, these affidavits suggested that Carter sometimes used his "personal rifle" when training law enforcement officers and military personnel. CP at 137-38. The State responded that 18 U.S.C. § 922(o) prohibited personal possession of machine guns and continued to argue that Carter had to establish that he had authorization under title 26 U.S.C. to lawfully possess a machine gun.
¶ 8 The trial court held a second hearing on Carter's motion to dismiss. At this hearing, Carter argued that the RCW 9.41.190(2)(b) exemption applied to him because his affidavits demonstrated that military and local law enforcement personnel had "used" his "personal rifle" in trainings. RP (May 1, 2009) at 9-10. The State argued, as it had before, that 18 U.S.C. § 922(o) prohibited possession of a machine gun except under two specific circumstances that did not apply to Carter, that Carter's title 18 U.S.C. federal license did not authorize him to personally possess a machine gun, and that Carter could own a machine gun only under title 26 U.S.C.
¶ 9 The trial court granted Carter's motion to dismiss. Again characterizing the RCW 9.41.190(2)(b) exemption as an element of the offense, it concluded that the State had failed to show that Carter did not qualify for the exemption, that Carter's title 18 U.S.C. license was enough to establish the exemption regardless of whether that license allowed him to possess a machine gun under federal law, and that Carter had shown that he had repaired or tested machine guns used by the military or local law enforcement.[5] It noted that the State did not dispute the license's validity, whether the license had been valid in May 1999, or the affidavits' contents.
¶ 10 The State appeals.

*725 ANALYSIS
¶ 11 The State argues that (1) the RCW 9.41.190(2)(b) exemption is an affirmative defense rather than an element of the offense of unlawful possession of a machine gun that the State had to disprove, (2) RCW 9.41.190's plain language demonstrates a legislative intent to make it unlawful for a person to privately possess a machine gun unless such possession is allowed under federal law, and (3) Carter not did qualify for the exemption because he failed to show that he was "exempt from or licensed under federal law" to privately possess a machine gun. RCW 9.41.190(2)(b). We agree.

I. Standard of Review and Statutory Interpretation
¶ 12 The core issues in this case involve the interpretation of RCW 9.41.190(2). RCW 9.41.190 provides in relevant part:
(1) It is unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession or under control, any machine gun ...; or any part designed and intended solely and exclusively for use in a machine gun ..., or in converting a weapon into a machine gun....
(2) This section shall not apply to:
(a) Any peace officer in the discharge of official duty or traveling to or from official duty, or to any officer or member of the armed forces of the United States or the state of Washington in the discharge of official duty or traveling to or from official duty; or
(b) A person ... who or which is exempt from or licensed under federal law, and engaged in the production, manufacture, repair, or testing of machine guns...:
(i) To be used or purchased by the armed forces of the United States;
(ii) To be used or purchased by federal, state, county, or municipal law enforcement agencies; or
(iii) For exportation in compliance with all applicable federal laws and regulations.
(3) It shall be an affirmative defense to a prosecution brought under this section that the machine gun ... was acquired prior to July 1, 1994, and is possessed in compliance with federal law.
¶ 13 "We review questions of statutory interpretation de novo and interpret statutes to give effect to the legislature's intentions." State v. Bunker, 169 Wash.2d 571, 577-78, 238 P.3d 487 (2010) (citing City of Spokane v. County of Spokane, 158 Wash.2d 661, 672-73, 146 P.3d 893 (2006)). We start our analysis by examining the statute's plain language as discerned "`from all that the Legislature has said in the statute and related statutes [that] disclose legislative intent about the provision in question.'" Bunker, 169 Wash.2d at 578, 238 P.3d 487 (quoting Chadwick Farms Owners Ass'n v. FHC, LLC, 166 Wash.2d 178, 186, 207 P.3d 1251 (2009)). "When interpreting a statute, we must avoid unlikely, absurd, or strained results." In re Det. of Coppin, 157 Wash. App. 537, 552, 238 P.3d 1192 (2010) (citing Morris v. Blaker, 118 Wash.2d 133, 143, 821 P.2d 482 (1992)).
¶ 14 But if a statute's plain language is ambiguous, "we look to principles of statutory construction and legislative history to discern the legislature's intent." State v. Wofford, 148 Wash.App. 870, 877, 201 P.3d 389 (2009) (citing State ex rel. Citizens Against Tolls v. Murphy, 151 Wash.2d 226, 242-43, 88 P.3d 375 (2004)), review denied, 170 Wash.2d 1010, 245 P.3d 773 (2010). "A statute is ambiguous if its language is susceptible to more than one reasonable interpretation." Wofford, 148 Wash.App. at 878, 201 P.3d 389 (citing State v. Bunker, 144 Wash.App. 407, 415, 183 P.3d 1086 (2008), aff'd, 169 Wash.2d 571, 238 P.3d 487 (2010)).

II. Defense or Element
¶ 15 The State argues that the trial court erred when it ruled that the RCW 9.41.190(2)(b) exemption was an element of the offense and that the State had the burden of disproving the exemption. We agree.
¶ 16 The trial court based its conclusion that the exemption was an element of the offense on a principle of statutory construction, stating that, when the legislature uses specific language in one part of a statute but *726 omits that same language in other parts of the statute, courts should assume that the legislature intentionally omitted the language. See State v. Roggenkamp, 153 Wash.2d 614, 625, 106 P.3d 196 (2005) ("Another fundamental rule of statutory construction is that the legislature is deemed to intend a different meaning when it uses different terms. State v. Beaver, 148 Wash.2d 338, 343, 60 P.3d 586 (2002); Simpson Inv. Co. v. Dep't of Revenue, 141 Wash.2d 139, 160, 3 P.3d 741 (2000)." (Parentheticals omitted)). The trial court correctly noted that subsection (3) expressly states that it is an "affirmative defense" but subsection (2) does not contain similar language and that this distinction may suggest a different legislative intent. RCW 9.41.190(2), (3). But we find that distinction alone is insufficient to support the trial court's conclusion here when there are competing statutory interpretation principles that dictate the contrary conclusion.
¶ 17 First, "[i]t is generally held in criminal cases that, if the facts of an affirmative defense lie immediately within the knowledge of the defendant, the onus probandi, under the principle of `balancing of convenience,' should be his." State v. Moses, 79 Wash.2d 104, 110, 483 P.2d 832 (1971) (citing United States v. Sisson, 399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970), Morrison v. California, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934); Rossi v. United States, 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051 (1933); State v. Harding, 108 Wash. 606, 185 P. 579 (1919); State v. Shelton, 16 Wash. 590, 592, 48 P. 258, 49 P. 1064 (1897); 9 John Henry Wigmore, Evidence §§ 2486, 2512 (3d ed. 1940)), cert. denied, 406 U.S. 910, 92 S.Ct. 1612, 31 L.Ed.2d 822 (1972); see also State v. Fry, 142 Wash.App. 456, 460-61, 174 P.3d 1258 (2008) (evidence of affirmative defense of medical use to charge of marijuana possession is more likely within defendant's knowledge), aff'd, 168 Wash.2d 1, 228 P.3d 1 (2010). Here, the existence of a federal license and the nature of the work Carter performed under that license were "immediately within" Carter's knowledge. Moses, 79 Wash.2d at 110, 483 P.2d 832.
¶ 18 Second, the legislature set out the subsection (2) exemption in a separate subsection rather than including it in the definition of the offense defined in subsection (1), clearly suggesting a legislative intent to create an affirmative defense rather than an element of the offense. See City of Spokane v. Karlsten, 137 Wash. 414, 416-17, 242 P. 389 (1926)[6]; see also United States v. Green, 962 F.2d 938, 941 (9th Cir.1992)[7]. And third, the exemption here does not negate an element of the charged crime, which also suggests that the exemption is not an element of the offense. See State v. McCullum, 98 Wash.2d 484, 490, 656 P.2d 1064 (1983).
¶ 19 Accordingly, we hold that the trial court erred when it ruled that the RCW 9.41.190(2)(b) exemption was an element of the offense of unlawful possession of a machine gun that the State had the burden of establishing. Instead, the exemption is a defense that Carter had the burden of establishing.

III. Nature of RCW 9.41.190(2)(b) Exemption
¶ 20 The State next argues that the trial court erred when it ruled that the RCW 9.41.190(2)(b) exemption allows those licensed under title 18 U.S.C. who have at some point repaired machine guns for or sold machine guns to the military or local law enforcement agencies to personally possess machine guns without first establishing that they are permitted to possess machine guns under federal law. Again, we agree.

A. Plain Language
¶ 21 The relevant portion of RCW 9.41.190 states:

*727 (2) This section shall not apply to:
...
(b) A person ... who or which is exempt from or licensed under federal law, and engaged in the production, manufacture, repair, or testing of machine guns...:
(i) To be used or purchased by the armed forces of the United States;
(ii) To be used or purchased by federal, state, county, or municipal law enforcement agencies.
(Emphasis added.)
¶ 22 Although RCW 9.41.190(2)(b) requires the person claiming the exemption to be "exempt from or licensed under federal law," it does not specify the federal law or the type of federal license it refers nor does it expressly state that a license holder must be acting in compliance with his federal license. But, reading the statute as a whole, the only reasonable way to read this section is as a reference to federal laws regarding when certain individuals may manufacture, own, buy, sell, lend, furnish, transport, or possess machine guns under very specific circumstances. Furthermore, interpreting this provision as merely requiring a person to show that he or she holds some kind of federal license, and not to also show that this license permits the conduct in question, would produce an absurd result by allowing an individual to engage in conduct that would be prohibited by the very license or exemption RCW 9.41.190(2) requires.[8]
¶ 23 Moreover, the restrictive exemption stated in subsection 2(a) supports this narrow reading. Although that exemption allows military and law enforcement personnel to possess machine guns, they may do so only when discharging their official duties or when traveling to or from official duty. This language strongly suggests that RCW 9.41.190(2)(b)'s reference to the defendant's being "engaged in" specific activities means that the exemptions apply only to those who are engaged in activities permitted under federal exemptions or licenses. Additionally, the phrase "and engaged in the production, manufacture, repair, or testing of machine guns"[9] "[t]o be used or purchased by" the military or law enforcement agencies further emphasizes that the purpose of the statute is not to allow personal ownership of machine guns but to ensure that possession of machine guns is limited to a narrow class of individuals, namely those already allowed possession or ownership under federal law and who are engaged in permitted activities.
¶ 24 We hold that the plain language of the statute does not support the trial court's conclusion that Carter was exempt from the prohibition against possessing a machine gun because he held a title 18 U.S.C. federal gun dealer's license without also having to demonstrate that he was entitled to own or possess a machine gun under federal law.[10] Furthermore, even if the statute *728 was ambiguous, the legislative history supports this conclusion.

B. Statutory History
¶ 25 Before 1982, Washington law provided that only law enforcement officers exercising their official duties or members of the armed forces could own or possesses machine guns:
That it shall be unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession, or under control, any machine gun, or any part thereof capable of use or assembling or repairing any machine gun: Provided, however, That such limitation shall not apply to any peace officer in the discharge of official duty, or to any officer or member of the armed forces of the United States or the state of Washington.
Former RCW 9.41.190 (1933).
¶ 26 In 1982, the legislature recognized that although "[c]ertain defense contractors are allowed by federal law to possess machine guns," state law did not contain a similar provision. 1982 Final Legislative Report, 47th Wash. Leg., at 51. To address this issue, the legislature amended former RCW 9.41.190 (1933)[11] to read:
It is unlawful for any person to manufacture, own, buy, sell, loan, furnish, transport, or have in possession or under control, any machine gun, or any part thereof capable of use or assembling or repairing any machine gun: Provided, however, That such limitation shall not apply to any peace officer in the discharge of official duty, or to any officer or member of the armed forces of the United States or the state of Washington: Provided further, That this section does not apply to a person, including an employee of such person, who or which is exempt from or licensed under the National Firearms Act (26 U.S.C. section 5801 et seq.), and engaged in the production, manufacture, or testing of weapons or equipment to be used or purchased by the armed forces of the United States, and having a United States government industrial security clearance.

Former RCW 9.41.190 (1982) (emphasis added); Laws of 1982, 1st Ex. Sess., ch. 47, § 2. The final legislative report bill summary stated, "Persons exempt from or licensed under the National Firearms Act and engaged in defense contracts may possess machine guns." 1982 Final Legislative Report, 47th Wash. Leg., at 52.
¶ 27 In 1994, the legislature rewrote the statute to its current form. Laws of 1994, sp. sess., ch. 7, § 420. The 1994 Final Legislative Report explained:
Currently, firearms manufacturers in Washington State may produce machine guns for sale to the United States armed forces. Members of the armed forces may possess machine guns, even when not engaged in official duties. Manufacturers are not expressly authorized to repair such firearms or to sell them to domestic law enforcement agencies, although law enforcement officers engaged in official duties are allowed to possess machine guns. Neither are manufacturers authorized by state law to sell machine guns to foreign countries, even if the manufacturer complies with all federal regulations.
1994 Final Legislative Report, 53rd Wash. Leg., at 51 (emphasis added). And the 1994 Final Legislative Report Summary commented on the effect of the newly enacted amendments:

A person, other than a law enforcement officer or member of the military, may possess machine guns ... only if in compliance with federal law. Both law enforcement officers and members of the military must be engaged in official duties to possess lawfully such firearms. A grandfather *729 provision is included for law enforcement officers and members of the armed forces who acquired such firearms prior to the effective date of this restriction.

Washington firearm manufacturers may produce and repair machine guns.... Manufacturers also may sell such firearms to domestic governmental law enforcement agencies and, if in compliance with federal law, to foreign countries. Employees of the manufacturers must undergo fingerprinting and background checks.
1994 Final Legislative Report, 53rd Wash. Leg., at 59 (emphasis added).
¶ 28 The 1994 amendment shows that the legislature intended to allow gunsmiths and manufacturers licensed under federal law to repair lawfully-owned machine guns and to expand some manufacturers' ability to sell machine guns to domestic law enforcement agencies and foreign countries. Although the legislature's somewhat awkward deletion of the title 26 U.S.C. reference may have made this statute more difficult to interpret, nothing in the legislative history suggests that the legislature intended to allow a federally licensed gun dealer or gunsmith to personally own a machine gun unless such ownership was also allowed under the applicable federal law. Thus, the trial court erred when it concluded that Carter merely had to demonstrate that he held a federal license and had worked on machine guns for the military or local law enforcement.

IV. Application
¶ 29 Accordingly, for the RCW 9.41.190(2)(b) exemption to apply here, Carter had to show that he not only held a federal license but that this license, or some other federal exemption, permitted him to personally possess a machine gun. The record before us shows that Carter failed to carry this burden.
¶ 30 Carter produced a title 18 U.S.C. dealer's license, which he asserted gave him the authority to own or possess the gun in question. He did not claim that he was entitled to own or possess a machine gun under any other federal license or federal law. Accordingly, we limit our consideration to title 18 U.S.C.
¶ 31 18 U.S.C. § 922(o) provides:
(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
(2) This subsection does not apply with respect to
(A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
(B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.
18 U.S.C. § 922(o)(1) makes it unlawful for "any person" to possess a machine gun, and Carter failed to produce any evidence suggesting that he was exempt from that prohibition under 18 U.S.C. 922(o)(2). He did not present any evidence suggesting that his gun was transferred to him by a qualified entity or that his possession of the gun was under the authority of such an entity, nor did he claim that the gun was "lawfully possessed before the date [subsection (o) took] effect."
¶ 32 Furthermore, Carter did not show that the exemption in 18 U.S.C. § 925(a)(1) applied. 18 U.S.C. § 925(a)(1) provides:
The provisions of this chapter, except for [three specific subsections of § 922 that do not apply in this case], shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

(Emphasis added.) Carter did not present any evidence suggesting that his firearm had been "imported for, sold or shipped to, or issued for the use of" the military or any government department or agency. Instead, his evidence suggested that he altered his own personal firearm and sometimes used it in firearm training courses.
¶ 33 Nor did Carter show that his title 18 U.S.C. § 923 dealer's license, which allowed *730 him to work as a gunsmith,[12] permitted private possession of a machine gun. 18 U.S.C. 923(c) provides in part:
Upon the filing of a proper application and payment of the prescribed fee, the Attorney General shall issue to a qualified applicant the appropriate license which, subject to the provisions of this chapter and other applicable provisions of law, shall entitle the licensee to transport, ship, and receive firearms and ammunition covered by such license in interstate or foreign commerce during the period stated in the license.
(Emphasis added). Nothing in this provision suggests that 18 U.S.C. § 923 allows for private possession of a machine gun unless he could do so under some other provision of title 18 U.S.C., which, as we discussed above, Carter has failed to establish.
¶ 34 Because the RCW 9.41.190(2)(b) exemption is a defense and Carter failed to establish that the exemption applies, the trial court erred when it granted Carter's motion to dismiss. Accordingly, we reverse and remand for further proceedings.
We concur: QUINN-BRINTNALL, J., and PENOYAR, C.J.
NOTES
[1] State v. Knapstad, 107 Wash.2d 346, 356-57, 729 P.2d 48 (1986) (trial court must dismiss the case if the State cannot establish a prima facie case); see also CrR 8.3(c).
[2] Carter continued to claim that the gun in question was not a machine gun and that it did not contain any parts "that were made solely and exclusively for use in a machinegun [sic]," but he agreed to assume that the gun was a machine gun for purposes of his motion to dismiss. CP 55, 60.
[3] Carter characterized his motion as a motion challenging "the jurisdiction of the state to bring this action." CP at 54. He also argued that federal law "preempted" RCW 9.41.190(1), CP at 57, and that if the exemption was an affirmative defense rather than an element of the offense, the statute was unconstitutionally vague. The trial court never reached the preemption or vagueness issues.
[4] Chapter 53 of title 26 U.S.C. is known as the National Firearms Act. 26 U.S.C. § 5849.
[5] Specifically, the trial court stated that it did not have to examine "[t]he federal prerequisites for lawfully possessing a machine gun" because Carter was not being prosecuted for violating federal law. CP at 161. It compared this situation to a defendant asserting a medical use of marijuana defense to a marijuana possession charge, noting that although marijuana possession violated federal law, the federal violation did not also mean that the defendant had violated state law. The trial court also stated, "Therefore, the sole question in this case is whether Carter was `licensed' under federal law for the purposes of the statute." CP at 162. It ruled that

[t]he plain language of the statute indicates that Carter is exempted under subsection (2)(b).... Subsection (2)(b) allows individuals to have a machine gun in their possession and control if they are "licensed under federal law" and meet the remainder of the requirements under the subsection. Carter is licensed under federal law as a dealer in firearms. He also provided sufficient evidence that he repaired and/or tested machine guns for the pertinent law enforcement agencies."
CP at 162.
[6] Distinguishing exceptions or provisos based on the existence of a license or a defendant's status from clauses contained "within the definition of the crime itself." Karlsten, 137 Wash. at 416, 242 P. 389.
[7] (Stating: "`[t]he well-established rule is that a defendant who relies on an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception,'" (quoting United States v. Guess, 629 F.2d 573, 576 (9th Cir. 1980)).)
[8] We acknowledge that the trial court recognized that the Medical Use of Marijuana Act, chapter 69.51A RCW, allows for marijuana possession under state law that would be unlawful under federal law. RCW 69.51A.900. But, unlike RCW 9.41.190(2), the Medical Use of Marijuana Act does not require the defendant to hold a federal license or to be exempt from prosecution under federal law in order to pursue that defense. See RCW 69.51A.040.
[9] We note that although Carter may have shown that military and law enforcement personnel sometimes used his personal weapon in firearm instructor trainings, the statute does not refer to training as one of the activities the person needed to be "engaged in" to qualify for the exemptionit refers only to being "engaged in the production, manufacture, repair, or testing of machine guns." RCW 9.41.190(2)(b).
[10] In his response, Carter also appears to argue that the defense is unconstitutionally vague. As argued here, a statute is void for vagueness if persons "`of common intelligence must necessarily guess at its meaning and differ as to its application.'" Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739, 818 P.2d 1062 (1991) (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). When determining whether the statute provides fair warning of the proscribed conduct, we examine the context of the entire enactment, giving the language a "sensible, meaningful, and practical interpretation." City of Spokane v. Douglass, 115 Wash.2d 171, 180, 795 P.2d 693 (1990). But we do not require absolute specificity. Douglass, 115 Wash.2d at 179, 795 P.2d 693. "[A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." City of Seattle v. Eze, 111 Wash.2d 22, 27, 759 P.2d 366 (1988). Because we hold that the statutory defense's plain language requires that a defendant establish that he or she was entitled to own or possess a machine gun under federal law, Carter's vagueness argument also fails.
[11] This amendment may have been, at least in part, a response to United States v. Sher, 421 F.2d 784 (9th cir.1970), in which the Ninth Circuit reversed a conviction under former 26 U.S.C. § 5851 (1954), for receipt and possession of a machine gun transferred in violation of former 26 U.S.C. § 5814 (1954), because compliance with former § 5814 required the defendant to incriminate himself under the Washington law making possession of machine gun a crime (former RCW 9.41.190 (1933)).
[12] "The term `dealer' means (A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker. The term `licensed dealer' means any dealer who is licensed under the provisions of this chapter." 18 U.S.C. § 921(a)(11) (emphasis added).