# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52544-5-II |
| Respondent, | |
| v. | |
| AARON MARK HARRIER, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Aaron Mark Harrier appeals his convictions for two counts of first degree possession of depictions of a minor engaged in sexually explicit conduct and for three counts of second degree possession of depictions of a minor engaged in sexually explicit conduct.  An internet cloud storage service provider, Synchronoss Technologies, Inc., ran a cursory search of all stored digital files and found six digital images with hash values matching those of known instances of child pornography.  Synchronoss reported this information via CyberTip to the National Center for Missing and Exploited Children (NCMEC) who forwarded the information to local police for investigation.

Harrier argues that the police, by opening and viewing the images from NCMEC, exceeded the scope of Synchronoss' lawful search of the images and thus, the opening and viewing of the images was unlawful, and the trial court erred by denying his motion to suppress.  Harrier relies on the Fourth Amendment to the United States Constitution and argues that the police's opening of the files was an expansion of the lawful search.  Whether the police expanded a lawful search

is a factor that is considered under the private search doctrine, but the private search doctrine is applicable under the Fourth Amendment. Because Article 1, section 7 of the Washington Constitution is more narrow than the Fourth Amendment, we resolve this matter under our state constitution.

We hold that Harrier has no privacy interest in the images obtained by Synchronoss and delivered to the police. Therefore, the police's opening and viewing of the digital images was not an unlawful search. Thus, the trial court did not err by denying Harrier's motion to suppress. Accordingly, we affirm Harrier's convictions.

FACTS

Synchronoss provides cloud based storage for Verizon Wireless customers.[1] At all times material to this case, Harrier had a Verizon account and subscribed to Synchronoss cloud storage. In 2015, Synchronoss conducted a search of its subscriber cloud database using the "hashing" technique.[2] As a result of this search, Synchronoss discovered six digital images associated with Harrier's Verizon account. These images had identical hash values to those identified in prior

---

[1] *See United States v. Crawford*, __ F. Supp. 2d __ , 2019 WL 3207854, slip op. at 2 (N.D. Oh. 2019).

[2] "[A] hash value is 'an algorithmic calculation that yields an alphanumeric value for a file.'" *United States v. Reddick*, 900 F.3d 636, 637 (5th Cir. 2018) (quoting *United States v. Stevenson*, 727 F.3d 826, 828 (8th Cir. 2013)). "[A] hash value is a string of characters obtained by processing the contents of a given computer file and assigning a sequence of numbers and letters that correspond to the file's contents." *Reddick*, 900 F.3d at 637. "Hash values are regularly used to compare the contents of two files against each other. 'If two nonidentical files are inputted into the hash program, the computer will output different results. If the two identical files are inputted, however, the hash function will generate identical output.'" *Reddick*, 900 F.3d at 637 (quoting Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 Harv. L. Rev. 531, 541 (2005)).

law enforcement investigations as being child pornography. As required under federal law,[3] Synchronoss submitted an online CyberTip of "[c]hild [p]ornography (possession, manufacture, and distribution)" to NCMEC. Clerk's Papers (CP) at 100.

NCMEC did not open or view the six images. Rather, NCMEC forwarded the CyberTip, including digital files of the images, to the Vancouver Police Department who assigned Detective Jason Mills to investigate.

Detective Mills opened and viewed the six image files to confirm that the images were child pornography. Based on his training and experience, he determined that the six images consisted of nude and partially nude prepubescent female children engaged in the lewd and lascivious display of their genitalia. Detective Mills then obtained search warrants based on the descriptions of the images and served them on Verizon and Synchronoss. The search warrant directed Synchronoss to provide "all information" held by Synchronoss associated with the suspect telephone number associated with the images. CP at 106.

Detective Mills received information from Verizon that confirmed that Harrier was the subscriber/account holder for the suspect telephone number. Synchronoss provided Detective Mills with a thumb drive containing account data associated with the suspect telephone number. The account data consisted of files containing family pictures of Harrier, including a photograph of a wallet displaying Harrier's Washington State Driver's License. The thumb drive also contained additional images depicting minors engaged in sexually explicit conduct. Detective

---

[3] 18 U.S.C. § 2258A.

Mills reviewed these images. At least 10 of the images depicted nude or partially nude, prepubescent children engaged in sexually explicit activities with adults.

Based on a detailed description of the images, Detective Mills then obtained a search warrant for Harrier's residence. When executing the search warrant, Detective Mills seized Harrier's cell phone. The cell phone was determined to be the same phone associated with the Verizon account and the Synchronoss files that were the basis of the initial search warrant.

Law enforcement interviewed Harrier after advising him of his constitutional rights[4] prior to asking questions. Harrier admitted to law enforcement that he had viewed images of minors engaged in sexually explicit conduct and that he had downloaded and/or saved images depicting minors engaged in sexually explicit conduct. Harrier also stated he used his cell phone for this purpose.

The State charged Harrier with two counts of first degree possession of depictions of a minor engaged in sexually explicit conduct and three counts of second degree possession of depictions of a minor engaged in sexually explicit conduct. Prior to trial, Harrier filed a motion to suppress the evidence against him, and the trial court denied the motion following a CrR 3.6 hearing.

The parties proceeded to a stipulated facts bench trial. The trial court found Harrier guilty as charged. Harrier appeals his convictions.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

ANALYSIS

Harrier argues that Detective Mills, by opening and viewing the images sent by NCMEC, exceeded the scope of Synchronoss' lawful private search of the images and that the opening and viewing of the images was unlawful. Harrier bases his argument on the Fourth Amendment to the United States Constitution. But the expansion of the private search doctrine is applicable under the Fourth Amendment, and is inapplicable under Article 1, section 7 of the Washington Constitution. As discussed below, we resolve this matter under our state constitution.

We hold that Harrier has no privacy interest in the images obtained by Synchronoss and delivered to the police; therefore, the police's viewing of the images was not a warrantless search. Accordingly, the trial court did not err by denying Harrier's motion to suppress and we affirm Harrier's convictions.

"[W]arrantless searches and seizures are per se unreasonable, in violation of the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). The Fourth Amendment protects a person's subjective and reasonable expectation of privacy. *State v. Hinton*, 179 Wn.2d 862, 868, 319 P.3d 9 (2014). And article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. 1, § 7. However, "[i]f a private affair is not disturbed, then there is no violation of article I, section 7." *State v. Reeder*, 184 Wn.2d 805, 814, 365 P.3d 1243 (2015). A defendant has the burden of proving a disturbance of his private affairs under article I, section 7. *State v. Butler*, 2 Wn. App. 2d 549, 557, 411 P.3d 393 (2018).

"[H]ash value comparison 'allows law enforcement to identify child pornography with almost absolute certainty,' since hash values are 'specific to the makeup of a particular image's data.'" *Reddick*, 900 F.3d at 639 (quoting *United States v. Larman*, 547 F. App'x 475, 477 (5th Cir. 2013) (unpublished)).  Tips to NCMEC from service providers and from NCMEC itself are considered to be from "reliable sources." *Millette v. U.S.*, __ F. Supp. 2d __, slip op. at 6, 2018 WL 3478891 (D. Me. 2018).

Under the private search doctrine, a warrantless search by a state actor that does not expand the scope of the private search does not offend the Fourth Amendment. *State v. Eisfeldt*, 163 Wn.2d 628, 636, 185 P.3d 580 (2008).  The private search doctrine was established in *Walter v. United States,* 447 U.S. 649, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980), and later applied in *United States v. Jacobsen,* 466 U.S. 109, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984) to sanction a warrantless search by state actors.  The private search doctrine is based on the rationale that an individual's reasonable expectation of privacy is destroyed when the private actor conducts his search. *Jacobsen*, 466 U.S. at 119.

Our Supreme Court held in *Eisfeldt* that the private search doctrine is inapplicable under our State Constitution.  The court in *Eisfeldt* also recognized that when a private party hands evidence over to the police, there is no privacy interest in that evidence.  163 Wn.2d at 638 n.9.  Additionally, there is no privacy interest in contraband.  *State v. Carter*, 151 Wn.2d 118, 126-27, 85 P.3d 887 (2004).  And child pornography is contraband.  *State v. Garbaccio*, 151 Wn. App. 716, 729, 214 P.3d 168 (2009).

Here, it is undisputed that Synchronoss, a private party, conducted the initial lawful search using the "hashing" technique.  The hash value of images from Harrier's cell phone was identical

to the hash value of images previously identified as child pornography by law enforcement. It is also undisputed that Synchronoss then made a legally required CyberTip to NCMEC, who forwarded the information and tip to the police for investigation.

We know from the hash values that the files Synchronoss found were child pornography and that this information, the images, and the CyberTip are reliable. *See Millette v. U.S.*, __ F. Supp. 2d __, slip op. at 6, 2018 WL 3478891 (D. Me. 2018). Because a private party conducted the search and the images are contraband, Harrier did not have a privacy interest in them. Thus the police's opening and viewing the images from a private party was not unlawful. *See Carter*, 151 Wn.2d at 126-27. Accordingly, Harrier's arguments fail.

CONCLUSION

We hold that the trial court did not err by denying Harrier's motion to suppress. Accordingly, we affirm Harrier's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, C.J.

WORSWICK, J.

7